NEAL S. SALISIAN, SBN 240277
neal.salisian@salisianlee.com
GLENN R. COFFMAN, SBN 305669
glenn.coffman@salisianlee.com
JARED T. DENSEN, SBN 325164
jared.densen@salisianlee.com
**SALISIAN | LEE LLP**
550 South Hope Street, Suite 750
Los Angeles, California 90071-2924
Telephone: (213) 622-9100
Facsimile: (800) 622-9145

MARISA D. POULOS (SBN 197904)
marisa.poulos@balboacapital.com
**BALBOA CAPITAL CORPORATION**
575 Anton Boulevard, 12th Floor
Costa Mesa, California 92626
Tel: (949) 399-6303

Attorneys for Plaintiff
AMERIS BANK d/b/a BALBOA CAPITAL CORPORATION

THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERIS BANK, a Georgia state-chartered banking corporation, doing business as BALBOA CAPITAL CORPORATION,<br><br>Plaintiff,<br><br>vs.<br><br>ESCP CORP., an Iowa corporation,<br><br>Defendants. | Case No.:<br><br>**PLAINTIFF AMERIS BANK D/B/A/ BALBOA CAPITAL'S COMPLAINT FOR:**<br><br>**1. BREACH OF EQUIPMENT FINANCING AGREEMENT NO. 1**<br><br>**2. BREACH OF EQUIPMENT FINANCING AGREEMENT NO. 2** |

COMPLAINT

Plaintiff Ameris Bank, a Georgia state-chartered banking corporation doing business as Balboa Capital Corporation ("Balboa" or "Plaintiff"), alleges as follows:

## PARTIES AND JURISDICTION

1. Plaintiff Ameris Bank d/b/a Balboa Capital Corporation ("Balboa" or "Plaintiff") is, and at all times relevant to this action was, a Georgia state-chartered banking corporation with Balboa Capital Corporation as one if its divisions, which division has its principal place of business in the State of California, County of Orange.

2. Defendant ESCP CORP. ("ESCP") is, and at all times relevant to this action was, an Iowa corporation with its principal place of business in the County of Scott, State of Iowa.

3. Plaintiff is informed and believes, and thereon alleges, that all Defendants, including any members or shareholders of any defendant entities, are all located outside of California.

4. The obligations sued upon herein are commercial in nature and the Complaint herein is not subject to the provisions of California Civil Code Sections 1801, *et seq.* (Unruh Retail Installment Sales Act) and/or California Civil Code Sections 2981, *et seq.* (Rees-Levering Motor Vehicle Sales and Finance Act).

5. Pursuant to the Equipment Financing Agreement described herein below, defendant ESCP agreed the document would be governed by the laws of the State of California. In addition, the Equipment Financing Agreement provides, in pertinent part, as follows:

> **GENERAL.** … This agreement **will be governed and construed under the laws of the State of California** without reference to its principle of conflicts of laws and is deemed to have been made and performed in Orange County, CA. **You submit to the exclusive and mandatory jurisdiction of CA** and agree that the CA state courts and/or the United States District Court for the Central District of California, Santa Ana division, will have exclusive and mandatory jurisdiction over any action or

proceeding to enforce this agreement or any action or proceeding arising out of this agreement.

6. <u>Jurisdiction</u>. This Court has jurisdiction over the case pursuant to 28 U.S.C. §1332(a).

7. <u>Venue</u>. This case is properly venued in this judicial district pursuant to 28 U.S.C. §1391(b)(2) and in the Southern Division pursuant to 28 U.S.C. §84(c)(3).

# FIRST CAUSE OF ACTION
## (Breach of Equipment Financing Agreement No. 1)
## (Against ESCP)

8. Balboa alleges and incorporates by reference each and every allegation contained above, inclusive, as though each were fully set forth here.

9. Prior to August 2020, Balboa is informed and believes that ESCP initiated and engaged with Praxair Distribution, Inc. located at 903 2nd Ave Rock Island, IL 61201 ("Equipment Vendor No. 1"), in order to coordinate the acquisition and financing of certain equipment (hereinafter referred to as "Collateral No. 1") for its business. Equipment Vendor No. 1 worked with ESCP in the selection of Collateral No. 1 and in coordinating its delivery.

10. Thereafter, Balboa is informed and believes, and therefore alleges, that Equipment Vendor No. 1 initiated and coordinated submission of Defendant's electronic credit application to Balboa and other financial institutions. Upon review, ESCP concluded that Balboa offered agreeable terms to finance Collateral No. 1 commensurate with its requirements. Thereafter, Equipment Vendor No. 1 accumulated and submitted to Balboa the requisite signatories, documentation and financial information from the Defendant to finance Collateral No. 1 being supplied by Equipment Vendor No. 1.

11. On or about August 3, 2020, ESCP executed a certain written Equipment Financing Agreement No. 332195-000 ("EFA No. 1"), under the terms

of which Balboa loaned to ESCP the principal sum of Sixty-Nine Thousand Five Hundred Sixty-Four Dollars and Seventy Cents ($69,564.70) in order to finance Collateral No. 1 for its business. EFA No. 1 required ESCP to make sixty (60) monthly payments of $1,618.65, payable on the 22nd day of each month beginning October 22, 2020. A true and correct copy of EFA No. 1 is attached as **Exhibit A** and is incorporated here by reference.

12. The terms of EFA No. 1 incorporate by reference the terms of the Authorization Agreement for Direct Deposit (ACH Credit) and Direct Payments (ACH Debit) (the "AA"). Pursuant to the AA, ESCP agreed to enroll in the Automatic Payment Plan and authorized Balboa to collect payments required under the terms of EFA No. 1 from a checking account designated by ESCP. ESCP provided the bank account information, which made it possible for Balboa to electronically debit payments under EFA No. 1. The terms of Balboa's Automatic Payment Plan included in the AA provide, in pertinent part, as follows:

> **AUTHORIZATION FOR ACH PAYMENTS:** Debtor authorizes Creditor, Creditor's successors and assigns to automatically initiate and make debit entry charges to Debtor's bank account indicated below, or the account from which the Debtor paid any deposit or fee in conjunction with the execution of this Agreement, or any account from which Debtor paid any obligation under this Agreement, or the account from which a cancelled or voided check provided by the Debtor can be drawn, for the payment of all amounts owed by Debtor from time to time under this Agreement. This authorization is to remain in effect during the term of this Agreement. Any incorrect charge will be corrected upon notification to Creditor, by either a credit or debit to Debtor's account.

A true and correct copy of the Authorization Agreement for Direct Deposit (ACH Credit) and Direct Payments (ACH Debit) signed by Jeff Moore, the CEO of ESCP, is attached hereto as **Exhibit A (Page 1)** and incorporated herein by reference.

13. The last payment received by Balboa was credited toward the monthly payment due for November 22, 2023. Therefore, on or about December 22, 2023,

ESCP breached EFA No. 1 by failing to make the monthly payment due on that date. Defendant ESCP's failure to make timely payments is a default under the terms of EFA No. 1.

14. In accordance with EFA No. 1, and as a proximate result of ESCP's default thereunder, Balboa declared the entire balance of the payments under EFA No. 1 to be immediately due and payable to Balboa. Therefore, there became due the sum of $37,228.95. These amounts are exclusive of interest, attorneys' fees and costs, no portion of which sum has been paid by ESCP.

15. In addition, the terms of EFA No. 1 provide that ESCP is liable to Balboa for late charges on all payments not made in a timely manner. As of the date of the filing of Balboa's Complaint, late charges in the sum of $291.36 are now due and owing.

16. Balboa has performed all of the terms, conditions, and covenants required to be performed by it under the terms of EFA No. 1, except as excused or prevented by the conduct of ESCP.

17. As a proximate result of ESCP' breach of the EFA No. 1, Balboa has been damaged in the total sum of $37,520.31, plus prejudgment interest from December 22, 2023, until the entry of judgment herein.

18. Further, under the terms of EFA No. 1, ESCP promised to pay all costs, including reasonable attorneys' fees, incurred by Balboa in the enforcement of EFA No. 1. Therefore, Balboa requests the Court award Balboa its reasonable attorneys' fees and costs as against ESCP.

19. EFA No. 1 also provides Balboa the remedy of possession of Collateral No. 1 and to obtain an order that Balboa may, in accordance with applicable state law, sell the remaining Collateral No. 1 and apply the net proceeds from the sale to the remaining loan balance. Alternatively, if possession cannot be had, Balboa is entitled to recover the value of Collateral No. 1.

## SECOND CAUSE OF ACTION

### (Breach of Equipment Financing Agreement No. 2)

### (Against ESCP)

20. Balboa alleges and incorporates by reference each and every allegation contained above, inclusive, as though each were fully set forth here.

21. Prior to January 2021, Balboa is informed and believes that ESCP initiated and engaged with Cosen International Inc. located at 11626B Wilmar Blvd. Charlotte, NC 28273 ("Equipment Vendor No. 2"), in order to coordinate the acquisition and financing of certain equipment (hereinafter referred to as "Collateral No. 2") for its business. Equipment Vendor No. 2 worked with ESCP in the selection of Collateral No. 2 and in coordinating its delivery.

22. Thereafter, Balboa is informed and believes, and therefore alleges, that Equipment Vendor No. 2 initiated and coordinated submission of Defendant's electronic credit application to Balboa and other financial institutions. Upon review, ESCP concluded that Balboa offered agreeable terms to finance Collateral No. 2 commensurate with its requirements. Thereafter, Equipment Vendor No. 2 accumulated and submitted to Balboa the requisite signatories, documentation and financial information from the Defendant to finance Collateral No. 2 being supplied by Equipment Vendor No. 2.

23. On or about January 11, 2021, ESCP executed a certain written Equipment Financing Agreement No. 332195-001 ("EFA No. 2"), under the terms of which Balboa loaned to ESCP the principal sum of One Hundred Fifteen Thousand Seven Hundred Eighty Dollars and Twenty-Nine Cents ($115,780.29) in order to finance Collateral No. 2 for its business. EFA No. 2 required ESCP to make sixty (60) monthly payments of $2,720.40, payable on the 13th day of each month beginning March 13, 2021. A true and correct copy of EFA No. 2 is attached as **Exhibit B** and is incorporated here by reference.

24. The terms of EFA No. 2 incorporate by reference the terms of the Authorization Agreement for Direct Deposit (ACH Credit) and Direct Payments (ACH Debit) (the "AA"). Pursuant to the AA, ESCP agreed to enroll in the Automatic Payment Plan and authorized Balboa to collect payments required under the terms of EFA No. 2 from a checking account designated by ESCP. ESCP provided the bank account information, which made it possible for Balboa to electronically debit payments under EFA No. 2. The terms of Balboa's Automatic Payment Plan included in the AA provide, in pertinent part, as follows:

> **AUTHORIZATION FOR ACH PAYMENTS:** Debtor authorizes Creditor, Creditor's successors and assigns to automatically initiate and make debit entry charges to Debtor's bank account indicated below, or the account from which the Debtor paid any deposit or fee in conjunction with the execution of this Agreement, or any account from which Debtor paid any obligation under this Agreement, or the account from which a cancelled or voided check provided by the Debtor can be drawn, for the payment of all amounts owed by Debtor from time to time under this Agreement. This authorization is to remain in effect during the term of this Agreement. Any incorrect charge will be corrected upon notification to Creditor, by either a credit or debit to Debtor's account.

A true and correct copy of the Authorization Agreement for Direct Deposit (ACH Credit) and Direct Payments (ACH Debit) signed by Jeff Moore, the CEO of ESCP, is attached hereto as **Exhibit B (Page 1)** and incorporated herein by reference.

25. The last payment received by Balboa was credited toward the monthly payment due for November 13, 2023. Therefore, on or about December 13, 2023, ESCP breached EFA No. 2 by failing to make the monthly payment due on that date. Defendant ESCP's failure to make timely payments is a default under the terms of EFA No. 2.

26. In accordance with EFA No. 2, and as a proximate result of ESCP's default thereunder, Balboa declared the entire balance of the payments under EFA No. 2 to be immediately due and payable to Balboa. Therefore, there became due

the sum of $70,730.40. These amounts are exclusive of interest, attorneys' fees and costs, no portion of which sum has been paid by ESCP.

27. In addition, the terms of EFA No. 2 provide that ESCP is liable to Balboa for late charges on all payments not made in a timely manner. As of the date of the filing of Balboa's Complaint, late charges in the sum of $979.34 are now due and owing.

28. Balboa has performed all of the terms, conditions, and covenants required to be performed by it under the terms of EFA No. 2, except as excused or prevented by the conduct of ESCP.

29. As a proximate result of ESCP's breach of EFA No. 2, Balboa has been damaged in the total sum of $71,709.74, plus prejudgment interest from December 13, 2023, until the entry of judgment herein.

30. Further, under the terms of EFA No. 2, ESCP promised to pay all costs, including reasonable attorneys' fees, incurred by Balboa in the enforcement of EFA No. 2. Therefore, Balboa requests the Court award Balboa its reasonable attorneys' fees and costs as against ESCP.

31. EFA No. 2 also provides Balboa the remedy of possession of Collateral No. 2 and to obtain an order that Balboa may, in accordance with applicable state law, sell the remaining Collateral No. 2 and apply the net proceeds from the sale to the remaining loan balance. Alternatively, if possession cannot be had, Balboa is entitled to recover the value of Collateral No. 2.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Balboa prays for judgment against Defendants, and each of them, as follows:

**On the First Cause of Action:**

1. The principal sum $37,520.31;

2. Prejudgment interest from December 22, 2023 to the date of entry of judgment;

3. Late charges and non-sufficient charges in an amount to be proven at trial;

4. An order to recover possession of Collateral No. 1 which is the subject of EFA No. 1, or if Collateral No. 1 cannot be delivered, for its reasonable value according to proof;

5. Reasonable attorneys' fees and costs;

6. Costs of suit as provided by law;

**On the Second Cause of Action:**

1. The principal sum $71,709.74;

2. Prejudgment interest from December 13, 2023 to the date of entry of judgment;

3. Late charges and non-sufficient charges in an amount to be proven at trial;

4. An order to recover possession of Collateral No. 2 which is the subject of EFA No. 2, or if Collateral No. 2 cannot be delivered, for its reasonable value according to proof;

5. Reasonable attorneys' fees and costs;

6. Costs of suit as provided by law; and

7. Such other and further relief that the Court considers proper.

DATED: January 16, 2023                SALISIAN | LEE LLP

By: _____
Neal S. Salisian
Glenn Coffman
Jared T. Densen

Attorneys for Plaintiff
AMERIS BANK d/b/a BALBOA CAPITAL CORPORATION